The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw a line and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. Welcome to the Fourth Circuit. Judge Floyd and I are glad to have Judge Gibney with us today from the Eastern District of Virginia, and we're ready to hear our first case, Billioni v. Bryant. Mr. Johnson. Yes, sir. Good morning. May it please the Court. My name is Chris Johnson with Gentilac Savitz & Bettis in Columbia, South Carolina, and I'm pleased to be here to represent Sheriff, now retired Sheriff, Bruce Bryant in this appeal of the denial of qualified immunity in a suit by a former detention officer of the York County Sheriff's Office. Mr. Bryant regrets that he was unable to be here today, however, the sitting Sheriff of York County is here in attendance, as is his Chief Counsel. The issue before the Court today is a narrow one, and that's whether in October of 2013 it was clearly established that the Sheriff could not discipline an officer that lied about engaging in protected speech. But isn't the real issue in the case what his motive was? No, it's not. If he had fired the guy solely because he made the speech, wouldn't that be a violation of his First Amendment rights? If you accept that what he was, and I'll concede for purposes of the appeal today, that he was talking on a matter of public concern, and that he was speaking as a citizen, he wasn't charged with investigating this thing. If you accept that, then you might be able to get to the conclusion that he couldn't be fired for that. But what wound up happening, what he was fired for, and I understand that there is a question below as to what the ultimate motive was. But the fact is that on this record, we have both a lawful motive, which is, I mean, I don't think there's any question that you can fire somebody for lying, and we have an unlawful motive. But nobody in that position is going to go out there and say, I'm firing you because of your First Amendment rights. They're not going to say that. There's always going to be something else with it. I don't know that I would, I mean, nobody's going to say I'm firing you for your First Amendment rights, but it certainly could have been the case that they said, we're firing you for violating confidentiality, and left it at that, had that been all that happened. But that's not the record we have today. But what we have on the record is that we went to this press conference. The sheriff was asked why he fired Bilioni, and he pauses and he looks down, shakes his head, and then he says, you know exactly why I was fired. And then he wouldn't take any more questions from the reporter who was at the TV station to which the story was leaked. Can't you infer from that that the motive was because the guy leaked the story to the press? I don't think you can, but I don't think that's what the court's here to decide today. Well, aren't they entitled to a jury trial on the motive? They are entitled to a jury trial on the motive if qualified immunity doesn't apply. But the fact is that once qualified immunity is raised, it is the plaintiff's burden not only to establish that there is a violation of the First Amendment, but also to show that the case law was clearly established, not at some high level of generality, but under the facts that were available to the sheriff at the time, which was that this officer had gone and had spoken to his wife about what he saw on a video. He wasn't involved in the thing. If he had any concerns about it, he didn't run him up the chain of command. He didn't talk with anybody about it. He went to his wife. The law was clearly established that he could not fire the guy simply for going to the press. That's unquestionable, right? I don't know that I would agree with that. Let's just assume for a second that he can't fire the guy for exercising his First Amendment rights. And isn't the guy entitled? Isn't that a factual dispute that needs to be resolved at some level? And isn't the law pretty clear as well in qualified immunity that if there is a factual question regarding the basis of the immunity, the discord lacks jurisdiction? No, that's not true. What the case is, and this court has said repeatedly, that a question of fact on motive does not rob the court of appeals of jurisdiction. But you've got to assume that he's right, don't you? I don't have to assume that he's right. I have to assume exactly what the district court assumed. The district court did not say, you win. The district court said, on this record, there's evidence of a lawful motive and an unlawful motive. And so what the job here today is to determine whether it is clearly established or was clearly established in October of 2013 that in the presence of the facts that support both of those, this sheriff could have known that it would violate his officer's rights to fire him for lying about protected conduct. So I think your task here is to take the applicable case law that relates to police departments and show why qualified immunity is applicable, if it is, based on that case law, tying that case law to the facts that you have in this case. I would submit, and I'll get to the case law in a moment, certainly, that the plaintiffs rely on, but I would submit that the burden is the plaintiffs to show, once qualified immunity has been raised, to show not only a violation of the First Amendment, but the fact that at the level of specificity on this record, that it was clearly established at the time the decision was made. Well, you've got lots of cases that say that police departments are treated differently from other employers. And it seems like to me that that's where you would want to be going, to try to implicate qualified immunity. Sure. I mean, we have, starting as far back as Massierello v. Sumner, and as recently as Brickey v. Hall and Kraus v. Town of Moncks Corner, this court has repeatedly reiterated that law enforcement departments have more leeway in restricting the speech of their employees than other public employers do. And I don't, I mean, that's not in dispute. So what do you do with our cases, such as Andrew, particularly with Judge Wilkinson's concurring opinion in that, and then later the Durham case, and then more recently, but it might not apply to your case, but in the Mocksville case where they really have nailed down that this is a clearly established violation? What those court cases said, first of all, none of those cases dealt with a plaintiff who lied to his superiors in the course of an internal investigation. What Andrews dealt with was actually a motion to dismiss, and it was an appeal from a grant of a motion to dismiss. So you had no developed fact record. And Andrews stood for the simple proposition it was a Garcetti case. And all the court was looking at there was whether or not the complaint in that case had raised enough factual matter to assert that the plaintiff was speaking as a citizen on a matter of public importance. That's not an issue in this case. It didn't deal with whether the plaintiff had lied. I thought you might have raised Judge Motz's concurrence in account of Mock's corner, which would appear to give you some degree of running room. When officers rush to have a superior officer fired for excessive use of force without giving the department a chance to conduct its own review or investigation, it is not clearly established law that their interest in telling private citizens to take action against their superiors, even though this is a public entity, outweighs the department's interest in preventing disruption. And that was 2017, four years after the events in this case. That's correct. And I agree. And we have certainly argued in our briefs that the sheriff, you know, based on, I mean, he didn't have that pronouncement at the time, obviously, but what that case does show is that it at least helps show that it's not clearly established that he could not restrict his officer's speech, certainly about an ongoing investigation, and that he could also expect that if his officer had some concerns, that he would run them up the chain of command first, which he did not do. I think it's important for this law. So is that a basis for qualified immunity here? How do you mean? Well, the fact that the plaintiff in this case didn't follow that course of action. I think it is a basis for qualified immunity. Yes, Your Honor. And, you know, in particular, what he violated as far as he was charged with two things. He was charged with violating confidentiality. There's a confidentiality provision, and he was charged with or dismissed for lying to his superiors in the course of an investigation into the information that had come out. Well, let me ask you about the district court's determination with respect to the showing of disruption, which relates to speech on a matter of public concern. The district court held that Sheriff Bryant did not make any showing of disruption within the sheriff's department due to the statements made by plaintiff. Is that the appropriate standard? Is that the appropriate standard for qualified immunity? No. Under the First Amendment. Certainly a showing of disruption. You don't have to show actual disruption. What you have to show is that disruption was reasonably to be apprehended. And what we had here, of course, was we had a reporter, and this is undisputed in the record, that had called and had details, time stamp on the video when actions had happened by the officers. He had their names and their ranks. Does that mean the district court applied the wrong standard? It does, Your Honor. All right. Why is that the wrong standard? The standard is not whether there was actual disruption. The standard is whether there was the disruption. Whether there's likelihood of disruption. Right. So how does getting a call from a reporter cause likelihood of disruption? Sure. Well, in addition to all of these factual details, he also has one unfactual detail, which is an allegation that the inmate was hit several times in the head. Well, okay, but how does that disrupt the department? Well, it disrupts the department because now you've got a reporter potentially is going to run a story that, as far as the sheriff's office knows, didn't happen. Well, okay, but that doesn't – there's all kinds of false stuff in the papers. Well, there may be, but I don't think anybody would dispute, and the plaintiff didn't dispute when he was asked in this case, that having accurate information come out, particularly about an in-custody death, is crucial to the public's confidence in their elected officials and the sheriff's elected officials. Well, his testimony was that disruption was either occurring or he apprehended it because they had to divert resources to conduct investigations, both of the plaintiff in this case and of the general leaks to the public for an ongoing investigation. I thought that was the sheriff's actual testimony. Well, I mean, it was his testimony that they had to do that, and that certainly was a disruption, particularly when this comes the day after the death itself, which is still under investigation by the State Law Enforcement Division, which is South Carolina's version of the FBI. Are deputy sheriffs and South Carolina employees, Will? They are, yes. I would bring us back to where I see I'm about ready to run out of time. I would bring us back to where we began. Again, today the issue is not to weigh the facts or to get bogged down in the motive issue that may be a tribal issue of fact. Today the job of the court is to determine if a plaintiff has established under First Amendment precedent in this circuit or from the Supreme Court that there is a right to lie about engaging in protected speech. Well, there is no such case. Do you concede or not that the district court's substantive First Amendment analysis was correct? I would not concede that. But, again, that's going to be fact-driven, and what the district court keyed in on was its belief that in the record you could find support for a jury verdict, both showing retaliatory motive and the lawful motive. I sense I may not have answered your question. Were you looking for something different? I'm sitting there thinking about your answer. You can go on. You've got some time left. That's why I've got five seconds. Essentially, that's what I wanted to put out there. The plaintiff has not pointed out any case at the requisite level for qualified immunity. I appreciate you hearing from me. You've got some rebuttal time left. Mr. Hopwood. Sheriff Bryant repeatedly asked this court to review a qualified immunity claim with mixed motives, but this is not a mixed motive case, and, in fact, the court will unlikely ever review a case for mixed motives on qualified immunity prior to trial. Whether it was speech or some other reason that was the but-for cause of plaintiff's termination is a fact, and we're here. The district court finds that causation is disputed. Right, but if that were the case, then we've got dozens of cases where speech has been the issue and there have been findings of qualified immunity. Those would all be wrong. No, those would not be wrong because, in those cases, the issue of causation was not disputed. The only claim that's properly before the court with jurisdiction that's not a trial issue is a claim that Sheriff Bryant fired Baloney for the speech and not for some other reason. This court has said in several different cases that where causation is disputed, the court prior to trial cannot review those claims. Right, but if you accept the premise, which I think we have to do here, and I think the opposing counsel did, that lying was one of two possible motives and that that's off the table for qualified immunity purposes because you have the other possible motive, then it's not so much an issue of causation. It's a question of, in this public speech category, it's just not the fact there's public speech.  Because it can be public speech, but it can be public speech that can still be disciplined. We have, particularly in the police department category, lots of cases that deal with that and they're treated different than some other public employers. And I get that, Judge. And what I'd say is, in response to that, those were not cases where causation was disputed. Tolan v. Cotton, which was the Supreme Court's, one of their most recent decisions. Yeah, but what difference would that make? If qualified immunity applies, it applies. Because the qualified immunity claim that's before the court is not whether Sheriff fired him for lying or a violation of confidentiality. It's whether he fired him for the speech and whether the Sheriff is entitled to qualified immunity given the material factual dispute is looked at in our favor. Well, what's the, tell me the material factual dispute. Causation. Why did Sheriff Bryant fire Bologna? Now, the other side said in the district court that it was lying and that it was a violation of confidentiality. But the district court found that that was disputed and that a reasonable juror could find that the Sheriff fired Bologna for the speech and for not some other reason. Right, but take the lying part out of it and you've got just speech. That comes up all the time in qualified immunity cases. It does, Your Honor, but all of those cases did not have a material factual dispute on causation that the court then looked at and said, listen, there's a material factual dispute about why he was fired and we're going to look at all of the reasons. Yeah, but if he concedes that the lying isn't sufficient and you're only dealing with public speech, I don't understand what your causation argument is. I don't think we have to argue causation. The causation as it comes to the court because of the factual dispute is that the Sheriff fired him for the speech and not one of these other reasons. That's a factual dispute that the court has to view in a light most favorable to us, the nonmoving court. I'm still not comprehending your argument because if it's speech and... It's only speech. Okay, it's only speech. But if that's the case, then there's no reason to look at all of the factors that go into speech in a public employee setting to determine whether qualified immunity applies. I understand what you're saying now. I agree with you. I agree with you. The difference here is my opponent's asking you to bring in material factual disputes and look at it in a light most favorable to him. And what I'm saying is the court can't look at lying or confidentiality policy violation. The only violation here was he fired him because of the speech, because this was a material factual dispute in the district court. As to the claim that is before the court... I don't understand there to be a factual dispute that the plaintiff did not take this up the chain of command. There's not a factual dispute. All right. And there are any number of cases in the Fourth Circuit, among others, that say that's a factor in the qualified immunity analysis. And that police departments are treated differently. I agree with you. So two responses to that. One, the court has jurisdiction here to review a claim for qualified immunity that Sheriff Bryant fired Bologna because of the speech. And in reviewing that claim, it can look at all of those cases. All I'm saying is the court doesn't have jurisdiction to decide the claim that he wants you to review, which is a claim that he was fired because of lying, confidentiality policy, and speech. The only thing that's properly before the court is the speech. Now, looking at that claim, assuming they haven't waived it, because they've never presented that claim to the court in any of their briefs. It's always been about mixed motives. Assuming the court excuses waiver, it was clearly established in this circuit in 2009 that where you have speech about a serious police misconduct, it requires an equally serious showing of disruption. Here, there's no doubt. What case says that? Both Cromer, Andrew, and then you have Durham and Hunter v. Monkstown. Well, I think the standard is that disruption has to be reasonably apprehended. I'm not aware of a case that says there has to be an actual showing of disruption. I agree. Can you cite that case? There doesn't have to be an actual showing of disruption, but the defendant has to claim some level of disruption. The only disruption here involved a violation of confidentiality policy. That's the only thing Sheriff Bryan ever claimed. Both Andrew and Durham both involved violations of confidentiality policy, and, in fact, that happens in almost all of these cases. Right, but those cases it was futile, based on the complaint, to have addressed it to the police department or the sheriff's department. And I think the opinions in Monk's Corner are fairly clear that that's a consideration in qualified immunity. And I agree with you. And your client didn't do that. No, but that is not the end-all, be-all for the qualified immunity analysis. Cromer, which is a 1996 decision from this case, says that where speech involves serious police misconduct, a failure to run a case up the chain of command and a complaint up the chain of command is not serious enough disruption to outweigh the public's interest in having this information. There's no question that this was. But that's all fact-dependent. I mean, that's not the rule of law. Well, at Cromer it said that. Cromer was a case where it was speech involving misconduct. Well, we've got lots of cases since 1996 that are wrong. Well, you have Andrew in all of those cases. And I don't think my opponent's right that Durham and the Hunter case both happened after the events here. And so I don't think that the sheriff relied on that. But I do think this court is bound by those. Both of those cases said 2009, it's clearly established two things. When it's speech involving serious police misconduct, it requires a much greater showing on the disruption end before that speech is unprotected. Here the sheriff knows this is speech about serious police misconduct because when the reporter calls him, his response to hearing about this incident is that, and this is his quote, I thought my staff had done something with a criminal nature. And that's JA-808-01. Isn't it true that in Hunter, Andrew, and Durham, there were independent lawful motives for the firing? Yes. Okay. And in those cases, if causation's not disputed, the court can take those into consideration. But where you have a material factual dispute, the court has to review the record in a light most favorable to us, which means no lying, no confidentiality policy. It's simply Sheriff Bryant fired Bologna because of the speech. And here Sheriff Bryant knew that this was serious misconduct because he was worried when he gets the call. How do you analyze the disruption question absent looking at the uncontested facts with regard to violation of confidentiality and the additional investigations that his actions caused? I mean, I don't think you dispute those. Well, I would dispute what the disruption is. Is it a disruption from a violation of confidentiality? Is it a disruption to the York County Sheriff's Office? You've got to remember that the York County Sheriff's Office The standard, though, is what did the employer reasonably apprehend as a disruption, not a disruption in fact. And here the district court found that he put forward no evidence of disruption. His only claim, Sheriff Bryant's only claim of disruption, was a violation of the confidentiality policy. Well, did the district court apply the correct standard? Because I read that to opposing counsel, and it appears the district court said it required a showing of actual disruption. I don't think it requires a showing of actual disruption, except for in one case. It shows a greater level of disruption in a case involving serious police misconduct. If it's speech about a dispute with employees like Krauss Let's go back there for a second. My question is, did the district court apply the wrong standard? No, it did not. So when it says Sheriff Bryant did not make any showing of disruption, you say that's the correct standard? It's the correct standard when the other side of the balance is serious police misconduct. I think that's what Andrew and Durham and Hunter all say. Where it's serious police misconduct on this side, it's going to require a greater showing of disruption on the other side of the balance. Now, if it's speech about an employee grievance like in Krauss, it doesn't require actual proof of disruption. It can be apprehended or just alleged that this was going to cause disruption. But where it's speech about serious police misconduct, like it was here, Sheriff Bryant knew that because he was worried that one of his staff had committed a crime. He has to know under this court's case law that it requires a greater showing of disruption before he can fire Officer Bologna for the speech. So your view and argument is that as an exception to ordinary rules, police departments are held to an actual disruption standard, not a reasonable apprehension standard. Only where it's speech involving serious police misconduct. Krauss and these other cases, it was speech that was false. It was speech that wasn't based on firsthand knowledge. It was speech that was about an employee grievance and not about serious police misconduct. And where it's those kinds of speech, it doesn't require actual disruption. Well, I think you could argue that in this case, what we do with the disruption is the court is required to balance that against the importance of the speech or the value of the speech or the interest in speech. And here the interest in the speech is that essentially Mr. Bologna alleges that a murder occurred in a jail. And whatever disruption may have been caused, even if... And I think that your opponent is correct that it all has to be as an apprehension or a fear of disruption. But a fear of disruption just doesn't outweigh reporting a murder in the jail. That's correct when it involves speech with serious police misconduct. If it's speech that doesn't involve that, it doesn't require a greater showing of disruption. But both Durham... It's not just, you don't have to have the other people walking around with placards complaining about the sheriff. What you've got to have is the sheriff reasonably anticipating that. Yes, and the sheriff only alleges one thing of disruption in this case. That's the violation of the confidentiality policy. And your position is that whatever disruption he may have anticipated is outweighed by the value and importance of the speech. That's correct, and that's what Durham and Hunter both say. And those cases, although they did occur after the events here, I think this panel is bound by those and how they view Andrew and what was clearly established. Both of those cases say in this circuit in 2009, where it's speech that involves serious police misconduct, it's clearly established that it's going to require a greater showing of disruption. And a violation of confidentiality policy is not enough. That was at issue in Andrew. When Andrew went public, it violated the confidentiality policy. Most police departments and jails have confidentiality policies. And if that disruption were enough to prevent speech about serious misconduct to be unprotected, you're not going to have officers go public with any speech involving police misconduct. Based on that theory, Judge Potts' concurrence in town of Mox Corner is just dead wrong. No, I don't think that that's right. I think that the balancing inquiry was different because that did not involve speech involving serious misconduct. The court found that that was an employee grievance case. That was speech not involving firsthand knowledge. Here, Baloney looked at the tape himself. That case also, you know, the court found that some of the statements that the officers made in that case were untruthful. And here, the speech that was given to Baloney's wife talked about the things that happened on that videotape, where officers had responded inappropriately in restraining Mr. Gross. When the sheriff realizes that this is speech about serious misconduct, and again, that I think is undisputed, JA 800-801, he says, I'm worried when I get this call that one of my staff may have committed a crime. He has to know at that point, based on this court's cases, that it's going to require a greater level of disruption before he can terminate Baloney for the speech. Well, did the district court in its substantive First Amendment analysis, did it get its view of the disruption correct? I think it did, because this involves speech of a most serious nature, and when it involves serious misconduct, as court said, it requires a greater showing of disruption. If this was speech about employee grievance, and the sheriff comes in and says, hey, violation of confidentiality disrupted my office, that would be enough. But where the speech involves misconduct and serious misconduct, it requires a greater showing. Here, the investigation, there was no claim that the speech disrupted the investigation at the jail, because the jail wasn't conducting the investigation. I don't think that's correct. I don't think the sheriff specifically testified that there was disruption, because he had to divert officers from the investigation to do a separate investigation of your client and a separate investigation of confidentiality in the department, separate and apart from investigating whether or not there was a crime committed here. So there is testimony directly from the sheriff that I don't believe your client contested. Now, Judge Agee, I think that's close to what the sheriff said. I think what the sheriff said was we had to do an investigation on who gave the leak. There was no question about who was doing the investigation of the death. It was not the jail. It was not the sheriff. It was SLED. SLED was going to conduct that investigation. And so the sheriff can't say that this speech bothered the investigation of the death of Mr. Gross, because the jail wasn't conducting that investigation. SLED was. The only disruption here is a violation of confidentiality. I realize that you contest that now, but what was your evidence in the district court to contest it? The sheriff's own testimony in his deposition saying that SLED was conducting the investigation and not his office. In fact, that's what Officer Trent Ferris said at the press release, where he says we're not going to do an investigation. We think our officers acted appropriately. This investigation is going to SLED. SLED is the state police. That's right. And so the York County Sheriff's Office could not have been disrupted by the speech because they weren't going to conduct that investigation in any event. They had already farmed that out to SLED. Was SLED doing the death investigation or the confidentiality investigation? SLED was doing the death investigation, and the sheriff's office was doing the investigation. What Judge Agee says is correct, that having to do that investigation diverted their resources from something else. Well, it diverted their resources from something else, but the something else wasn't the investigation of the death. It wasn't the death investigation. Yes, because SLED was doing that. And so there were no diverted resources. What difference does that make? Well, because they have to show disruption within the York County Jail's office, not a disruption to SLED or some other outside group, at least under this court's cases. Right. And so there couldn't have been disruption to the investigation because SLED was conducting that and not the York County Sheriff's Office. But they had officers that would have been doing something else if they weren't doing this. And I agree that there is some disruption, but under this court's cases where it involves speech involving serious police misconduct, that's not enough. Andrew and Durham both involved where officers violated confidentiality policy by bringing their speech to the public, and this court didn't find in either one of those cases that that mattered because of the importance it put to the public on having speech about serious police misconduct. Confidentiality policy was enough to preclude protection. You'll have no officer come forward with speech about serious police misconduct because the disruption will always outweigh it. But that's, again, I think Durham and Hunter both say, clearly established in 2009 and 2011, that the speech was protected. And the claim that Sheriff Bryant wants you to decide today is a jury trial issue and a fact issue in which this court doesn't have jurisdiction to hear. So how would that be resolved at trial? Would interrogatories be submitted to the jury on the question of what his motive was, and then if it was mixed motives based on the interrogatories, the court could apply qualified immunity at that time? I see I'm out of time. Please answer. The jury would have evidence about, from Sheriff Bryant, why he fired Bologna, and Bologna would present evidence showing that he was fired for the speech, and the jury would find what was the but-for cause. And then would the judge submit special interrogatories to the jury asking whether he did it solely because he did it to the press or because he went to the press and because of the confidentiality? And this is why you'll never see a mixed motive case, because either the jury is going to decide what was the causation, why did the plaintiff get terminated, or you're going to have a case like this where there's a material factual dispute in the district court. Well, I mean, there could be two motives, and if they decide that it's two motives, then he's probably correct that they went on qualified immunity. I agree, but I think what my side would ask for is for the jury to decide what's the but-for causation. There could be a million different motives, but the big question is what was but-for causation for why the sheriff fired my client. Thank you for your time. Thank you. Mr. Hopwood, Mr. Johnson, you have a little time left. Thank you, Your Honor. Addressing the issue of disruption, I can't imagine what would be more disruptive than having you already got sled in doing the investigation, and at least preliminarily, they've told you after interviewing everybody and after viewing the same videos and probably others that Corporal Bilioni saw that they don't, as a preliminary matter, see anything wrong, and now you get this allegation in that, as my colleague put it, that the sheriff thought that he had someone who had committed a crime and he's got to run that down. I can't imagine what would be more disruptive than that. Does covering up a murder outweigh having simultaneous investigations? Well, let's talk about that because covering up a murder is not what he said happened. Well, but it's what Bilioni says happened. It is not what Bilioni said happened. He said they beat the guy to death, didn't he? No, he did not. In fact, in his deposition, he concedes that the strikes he was concerned about from Officer Moore did not contribute to the man's cause of death because he hit him in the midsection. The cause of death was blunt force trauma to the head. But that's not what he said in his deposition isn't the relevant speech. It's the speech that he made to the TV station, and that speech was essentially that a murder occurred in jail. I don't think he told – well, first of all, he didn't talk to the TV station. He talked to his wife, and what he testified that he told his wife was that – he told her – I mean, everybody knew there had been a death, but he told her – he said he told her the names and the ranks of the officers involved, and he told her that he had a specific concern that Officer Moore, who had been involved in a scuffle with an inmate previously and who had been sent away as a result of that scuffle to get counseling before he was allowed to come back, that he had been involved in this struggle too and that he had hit the inmate. Now, he says that he maintains adamantly in his deposition that he did not tell anyone that Moore or anyone else hit the inmate in the head. So I don't know where the reporter got that from, but that is – there's no dispute that that's the information that came to the sheriff's office. So, you know, and this talking about the value of the speech, I mean, this shows why the value of the speech is negligible. It's not negligible. It is negligible. To report how a death occurs at the jail is negligible? That's your position? To sled, to the attorney general's office, to the governor, to somebody who can do something about it. But what he did was he didn't take it to the people of South Carolina. He took it to his wife, and what he told the chief of the detention center was that he did not know his wife would take it to the media. He told them that. So that's the information that the sheriff has before him. The sheriff can't know what his secret motives are, that he doesn't decide until his deposition that he secretly hoped she would take it. So on that basis alone, I think he's entitled to qualified immunity. To clarify the issue that came up earlier, the sled was investigating the criminal matter. Chief Arwood testified that they conducted an internal review of the death. Sled was investigating the death for criminal purposes. They conducted their own internal review of it to see if any policies had been violated. And then, of course, they also had to conduct this hunting down the issue of whether he was hit in the head. Getting back quickly to this mixed motive issue, the lie is the elephant in the room. And the reason it's the elephant in the room is because they know that they can't get around it. There's not a case that privileges somebody to lie. And we don't have to decide here what the but-for cause was. We just have to look at the record that the district court left us, which is there is evidence both ways. And the 11th Circuit has dealt with this head on. They've said where there's mixed motives, then qualified immunity is going to be the rule unless the plaintiff shows a case that says on these facts, under these circumstances, that he is entitled to win. And they haven't produced that case to you. And quickly, as far as mixed motives go, Fourth Circuit, Williams v. Hansen. That was a qualified immunity case, and there was a dispute over the motive of the sheriff for asking all of the African-American officers questions about discrimination as opposed to asking everybody. They were still able to decide the issue of qualified immunity despite those mixed motives, and this court here can do that today. I don't have anything else. I see I'm out of time. All right. Thank you very much. We'll come down to great counsel and move on to our next case.
judges: G. Steven Agee, Henry F. Floyd, John A. Gibney Jr.